Ibis Sael SANTOS–MORALES, aka Isbis Sael Santos–Flores, aka Isbis Sael Santos, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 02–73663.

Agency No. A70–927–615.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 2004.

Decided March 1, 2004.

John Ayala, Cobos and Ayala, Los Angeles, CA, for Petitioner.

Regional Counsel, Western Region, Immigration & Naturalization Service, Laguna Niguel, CA, Los Angeles District Counsel, Ronald E. LeFevre, Chief Legal Officer, Office of The District Counsel, Department of Homeland Security, Los Angeles, CA, Terri J. Scadron, Ann Carroll Varnon, Hillel Smith, DOJ—U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before NOONAN, THOMAS, and BEA, Circuit Judges.

## MEMORANDUM *

Ibis Sael Santos–Morales petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying his application for asylum and withholding of deportation. We have jurisdiction under 8 U.S.C. § 1252 and grant the petition for review.

Because the immigration judge found Santos–Morales credible and the BIA did not make an explicit credibility finding, "we must assume that the applicant's factual contentions are true." *Ernesto Navas v. INS*, 217 F.3d 646, 652 n. 3 (9th Cir. 2000). We review the decision regarding Santos–Morales's eligibility for asylum and withholding of deportation under the substantial evidence standard, meaning that we must uphold the decision "if it is supported by reasonable, substantial, and pro-

bative evidence." *Del Carmen Molina v. INS*, 170 F.3d 1247, 1249 (9th Cir.1999).

Santos–Morales's mother died when he was a young child. His father was an active member of the Union de Centro Nacional Party ("UCN"), an opposition political party in Guatemala. Santos–Morales accompanied his father to UCN meetings four or five times a week. When Santos–Morales was eleven, his father was murdered for unknown reasons. Orphaned by his father's murder, Santos–Morales was taken in by neighbors.

Santos–Morales returned to his home to get clothes shortly after his father's death. Six uniformed men broke into the house and demanded that Santos–Morales turn over his father's UCN documents. When Santos–Morales told the uniformed men he did not know where the political papers were located, they took out a machete and threatened to cut off his arm. The men then placed his hand on the kitchen table and chopped off part of his index finger. The men fled after Santos–Morales screamed and neighbors started to come to his assistance. Before they left, however, they told Santos–Morales that he would see them again.

Santos–Morales next sought refuge with his sister but had to flee after a short time because of neighbors' reports that government officials were still looking for him. Santos–Morales's brother-in-law then took him to live with friends in another city in Guatemala. Santos–Morales's brother-in-law returned four months later, showing up with scars all over his body and government officials in close pursuit, to tell Santos–Morales to leave immediately because he was no longer safe there. Santos–Morales fled to Mexico and illegally entered the United States in December of

---

1990, two weeks shy of his twelfth birthday.

In rejecting Santos–Morales's application for asylum and withholding of deportation, the BIA explained that Santos–Morales "did not know who killed his father, why he was killed, or the identity of the intruders who came into his home." The BIA provided no further explanation or analysis. The BIA did not address the facts that uniformed men broke into Santos–Morales's home and that they tortured Santos–Morales to obtain the political papers of an opposition party. The BIA did not address the fact that Santos–Morales attended UCN functions as often as five times a week. The BIA did not address the facts that the uniformed men told Santos–Morales that he had not seen the last of them and that government officials then continued to pursue him until he fled the country.

For the foregoing reasons, we conclude that the BIA's decision that Santos–Morales was not persecuted on account of political opinion is not supported by substantial evidence. We accordingly grant Santos–Morales's petition for review and remand to the BIA to consider Santos–Morales's eligibility for asylum and withholding of deportation, including his eligibility for asylum on humanitarian grounds pursuant to the BIA's decision in *Matter of Chen*, 20 I. & N. Dec. 16, 1989 WL 331860 (BIA 1989).

**PETITION FOR REVIEW GRANTED; REMANDED FOR FURTHER PROCEEDINGS.**

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.